Peters, J.E
Appeal from a decision of the Workers’ Compensation Board, filed July 24, 2007, which ruled that Steel Style, Inc. was claimant’s sole employer.
In November 2004, Steel Style, Inc. verbally agreed to provide the assistance of three of its employees, including claimant and his father, who was Steel Style’s supervisor, to Perini Corporation for the purpose of unloading steel beams from Perini’s trucks. During the course of the work, the boom from a crane fell onto the trailer that claimant was unloading and struck him, causing severe injury. Claimant submitted a claim for workers’ compensation benefits, naming Steel Style as his employer, while Perini alleged that claimant was its special employee on the day of the accident. A Workers’ Compensation Law Judge ultimately found that Steel Style was the proper employer and that no special employment relationship existed between claimant and Perini. Upon review, the Workers’ Compensation Board affirmed. Perini appeals.
It is well settled that the question of whether a general employee of one employer is also a special employee of another is a factual issue for the Board to resolve and its determination must be upheld if supported by substantial evidence (see Matter of Hasbrouck v International Bus. Machs. Corp., 38 AD3d 1146, 1147 [2007]; Matter of Arteaga v ISS Quality Serv., 14 AD3d 951, 952 [2005]). Factors relevant to determining whether a special employment relationship exists include “the right to control, the method of payment, the furnishing of equipment, the right to discharge and the relative nature of the work” (Matter of Shoemaker v Manpower, Inc., 223 AD2d 787, 787-788 *1100 [1996], lv dismissed 88 NY2d 874 [1996]; see Matter of Rosato v Thunderbird Constr. Co., 299 AD2d 670, 672 [2002], lv dismissed 100 NY2d 615 [2003], lv denied 1 NY3d 509 [2004]). Although no single factor is determinative, a key element is “who controls and directs the manner, details and ultimate result of the employee’s work” (Thompson v Grumman Aerospace Corp., 78 NY2d 553, 558 [1991]; see Matter of Mehar v Skyline Credit Ride, 301 AD2d 808, 809 [2003]; Matter of Shoemaker v Manpower, Inc., 223 AD2d at 788). Therefore, “in the absence of a clear demonstration of surrender of control by the general employer and assumption of control by the special employer, the general employment is presumed to continue” (Matter of Oppedisano v Randall Elec., 285 AD2d 759, 760 [2001]; see Thompson v Grumman Aerospace Corp, 78 NY2d at 557; Matter of Rosato v Thunderbird Constr. Co., 299 AD2d at 671).
Here, the work in question, although in furtherance of Perini’s business, was performed on Steel Style’s premises and with equipment, including a crane and rigging devices, provided by Steel Style. The evidence also established that Steel Style retained the three employees on its payroll and paid them directly for the work performed on the date of the accident. According to David Plotkin, Steel Style’s president, he retained the right to discharge or reprimand claimant, and specifically instructed claimant’s father as to the work that was to be performed and that he “would be in charge of his men.” Moreover, the evidence fails to sufficiently demonstrate that Perini actually exerted control or authority over claimant or that claimant “was aware of and consented to his special employee status” (Thompson v Grumman Aerospace Corp, 78 NY2d at 558; see Murray v Union Ry. Co. of N.Y. City, 229 NY 110, 112-113 [1920]; Matter of Fisher v KJ Transp., 27 AD3d 934, 935 [2006]). Claimant, his father and the other Steel Style employee who assisted in unloading the beams all testified that they were neither informed, nor under the impression, that they were working for Perini, or that their employment status or relationship with Steel Style would be in any way affected. Indeed, claimant considered Plotkin to be his boss and his father to be his immediate supervisor for the work, and testified that on the day of the accident he received directions only from his father and was never instructed by any Perini employee. While Perini’s on-site employee may have provided claimant’s father with some general instructions concerning placement of the steel beams, this conduct does not create a special employment relationship between Perini and the Steel Style employees (see Sherman v Reynolds Metals Co., 295 AD2d 843, 845 [2002]; see also Montalbano v Kurt Weiss Florist, 1 AD3d 414, 415 [2003]).
*1101 Although Perini’s witnesses provided a conflicting account as to who was in control of the work and which party was responsible for the payment of wages, “the Board was entitled to resolve the conflicting evidence based upon its assessment of the witnesses’ credibility and the reasonable inferences drawn therefrom” (Matter of Topper v Cohen’s Bakery, 295 AD2d 872, 873 [2002]; see Matter of Papadakis v Volmar Constr., Inc., 17 AD3d 874, 875 [2005]). We find the Board’s resolution of these issues to be particularly appropriate in light of the fact that the only documentary evidence suggesting a special employment relationship was created after the accident occurred. As substantial evidence supports the Board’s determination that a special employment relationship did not exist between Perini and claimant, “it is irrelevant that the evidence, as argued by [Perini], could support a different conclusion” (Matter of Oppedisano v Randall Elec., 285 AD2d at 760; Matter of Johnson v New York City Health & Hosps. Corp., 214 AD2d 895, 896 [1995], lv denied 86 NY2d 707 [1995]).
Finally, we find no abuse of discretion in the Board’s refusal to consider Perini’s untimely reply and sur-rebuttal (see 12 NYCRR 300.13 [e] [2]; Matter of Bordenet v Maines Paper & Food Serv., 50 AD3d 1276, 1276 [2008]).
Rose, Lahtinen, Kane and Malone Jr., JJ., concur. Ordered that the decision is affirmed, without costs.